UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBINETTE AMAKER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KING COUNTY, STANLEY MEDICAL RESEARCH INSTITUTE, and E. FULLER TORREY,<br><br>　　　　　Defendants. | No. CV5-1470 MJP<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Joint Motion for Summary Judgment Dismissal of All Claims. (Dkt. No. 39). Having considered the parties' briefing and the relevant documents presented, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion.

**BACKGROUND**

Plaintiff's brother, Bradley Gierlich ("Bradley"), died on October 13, 1998. Bradley was survived by Plaintiff Robinette Amaker, his sister, Robert Gierlich ("Robert"), his father, and Theresa Wright ("Theresa"), his maternal aunt. On October 15, 1998, the King County Medical Examiner's Office ("KCMEO") pathologist Dr. Menchel performed an autopsy. Dr. Menchel states in his declaration that he attempted to contact Robert by phone a number of times to inquire about the donation of Bradley's brain and other tissue, but was unsuccessful. Dr. Menchel also states in his declaration that Theresa assured him Robert would consent to the donation. Dr. Menchel states he mailed Robert a consent form based on Theresa's assurances. Believing that the consent form would

ORDER - 1

soon be signed and returned, Dr. Menchel proceeded to ship Bradley's brain, spleen, liver segments, pineal and pituitary glands, cerebral dura, and blood to the Stanley Medical Research Institute ("SMRI"). Theresa states in her declaration that she never discussed the issue of consent with Dr. Menchel, and did not know whether Robert would or would not sign the consent form.

Plaintiff arrived in Seattle on October 15, 1998, and worked with the KCMEO to make cremation arrangements. She states in her declaration that she was not asked for permission to harvest Bradley's organs for research. Plaintiff also states in her declaration that if she had been asked for permission, she would not have consented. On the authorization form for cremation, Plaintiff acknowledged that Robert Gierlich was Bradley Gierlich's legal next of kin. Plaintiff left Seattle on October 17, 1998, with her brother's remains. Robert Gierlich died in 2004. A news reporter contacted Plaintiff in January or February 2005 and asked whether Bradley's brain had been removed for research. After publication of a story regarding donation of brain tissue to SMRI, SMRI contacted Plaintiff to advise her it had been unable to locate documentation of Robert's consent to Bradley's organ donation. On August 19, 2005, Plaintiff filed suit against King County, SMRI, and E. Fuller Torrey (Co-Director of the Stanley Brain Research Laboratory), alleging various claims regarding the unconsented to donation.

Defendants King County, SMRI, and Torrey moved jointly for summary judgment and dismissal of all claims. In her response, Plaintiff concedes dismissal of the outrage, negligent infliction of emotional distress, conversion, and any consumer protection act claims. Plaintiff opposes dismissal of the invasion of privacy, common law interference with a corpse, violation of the Washington's Uniform Anatomical Gift Act ("UAGA"), and civil conspiracy claims. In their motion for summary judgment, Defendants also move to strike four portions of Plaintiff's declaration.

**STANDARD OF REVIEW**

This matter is before the Court on Defendants' motion for summary judgment. Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed

ORDER - 2

in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

**ANALYSIS**

**1. Motion to Strike**

Defendants have moved to strike four portions of Plaintiff's declaration. They argue that Plaintiff may not create a genuine issue of material fact by presenting a declaration contradicting her prior deposition testimony. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). But the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." Id. at 266-67. Rather, the rule focuses on "'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." Id. at 267. The Court must therefore make a factual determination that the contradiction was actually a "sham" before applying this rule. Id.

Plaintiff claimed in her declaration that she had multiple contacts with the KCMEO in person and by telephone to coordinate funeral arrangements. In her deposition, Plaintiff stated she was not certain she went in person, and also that she made one phone contact with the KCMEO. Although there are some inconsistencies in her testimony in this regard, Plaintiff's deposition is not flatly

ORDER - 3

contradictory to her declaration because she indicates in her deposition that she may have contacted the KCMEO more than once.

Plaintiff also states in her declaration that although she knew in early 2005 that her brother's brain had been removed, she did not learn until litigation started that SMRI had "additional body parts" of her brother. Yet in her deposition she testified that before she filed suit, SMRI confirmed it had Bradley's brain, tissues and blood. (Amaker Dep. at 122, ll. 13-20). Plaintiff also stated in her deposition that a reporter sent her documents regarding the removal of Bradley's brain "as well as other organs" before she filed suit. (Amaker Dep. at 113, ll. 20-21). Although this statement does contradict her deposition testimony, it does not create an issue of fact for summary judgment. Plaintiff uses this statement to support her argument that she was the legal next of kin at the time when Defendants' actions became known. But because her father Robert passed away in 2004, Plaintiff could have argued that she was Bradley's "legal next of kin" anytime after 2004. This discrepancy therefore does not affect her argument on summary judgment.

Plaintiff also states in her declaration that she would not have consented had anyone in KCMEO asked her for permission to donate her brother's organs. Defendants argue that this is contradicted by her deposition, in which Plaintiff admitted she was an organ donor, supported organ donation, and believed research on mental illnesses was important. She also testified that Bradley believed he could not be an organ donor because he had hepatitis. But Plaintiff did not discuss whether Bradley was opposed to organ donation. Plaintiff's support of organ donation for herself is not contradictory to the fact that she would not have consented to donating Bradley's organs. The fact that Bradley believed he could not be an organ donor is also not flatly contradictory to the fact that Plaintiff would not have consented to donate her brother's organs.

Plaintiff also claims that her father, Robert, was not capable of consenting to the donation of Bradley's tissues because of CADASIL symptoms. Defendants argue that this contradicts her deposition testimony in which she admitted that at the time of Bradley's death, Robert lived independently in a retirement community and that no legal arrangements had been made to take care of him. Although Plaintiff's claim in her declaration that Robert was not capable of consenting goes

ORDER - 4

significantly further than her deposition testimony, it is not flatly contradictory to her deposition testimony.

For these reasons, the Court denies Defendants' motion to strike portions of Plaintiff's declaration.

**2. Washington's Uniform Anatomical Gift Act**

Plaintiff alleges that Defendants violated Washington's Uniform Anatomical Gift Act ("UAGA"), RCW 68.50.550(3) (2006), by failing to obtain an appropriate signed document or recorded message from her before harvesting Bradley's organs. Under Washington's UAGA, anatomical gifts made by a person other than the decedent must be consented to by a member of one of the classes of persons listed in the statute, in the order of priority listed. RCW 68.50.550.[1]

Defendants argue that Plaintiff lacks standing to bring her UAGA claim because Defendants only owed a legal duty to Robert. RCW 68.50.550(1) prioritizes the classes of persons who may make an anatomical gift of all or a part of the decedent's body. A person listed under subsection 1 may not make an anatomical gift if "a person in a prior class is available at the time of death to make an anatomical gift." RCW 68.50.550(2). Robert, as decedent's father, had first priority in making an anatomical gift of Bradley's remains. RCW 68.50.550(1)(e), (f). Therefore, Defendants argue Plaintiff did not have had authority to make an anatomical gift of Bradley's remains.

---

[1] The relevant portion of the statute provides:
   (1) A member of the following classes of persons, in the order of priority listed, absent contrary instructions by the decedent, may make an anatomical gift of all or a part of the decedent's body for an authorized purpose, unless the decedent, at the time of death, had made an unrevoked refusal to make that anatomical gift:
   (a) The appointed guardian of the person of the decedent at the time of death;
   (b) The individual, if any, to whom the decedent had given a durable power of attorney that encompassed the authority to make health care decisions;
   (c) The spouse of the decedent;
   (d) A son or daughter of the decedent who is at least eighteen years of age;
   (e) Either parent of the decedent;
   (f) A brother or sister of the decedent who is at least eighteen years of age;
   (g) A grandparent of the decedent.

   (2) An anatomical gift may not be made by a person listed in subsection (1) of this section if:
   (a) A person in a prior class is available at the time of death to make an anatomical gift.

ORDER - 5

1    Plaintiff contends that she has standing because Robert was not "available" at the time of
2 Bradley's death. If Robert was not available, as Bradley's sister, Plaintiff would have been next in the
3 RCW 68.50.550(1) line of priority to make an anatomical gift.

4    Plaintiff first argues that her father was not available at the time of death because he lacked
5 the mental capacity to give any kind of consent. But Washington's UAGA does not include an
6 express mental competency requirement, and the only case cited by the parties is of limited relevancy
7 here. See Kelly-Nevils v. Detroit Receiving Hosp., 207 Mich. App. 410, 417-18, 526 N.W.2d 15
8 (1995) (holding that a hospital need not conduct an investigation to ascertain that the signatory is
9 legally authorized to consent, and that the Uniform Anatomical Gift Act imposes no such duty to
10 investigate). The Court is not willing to introduce a competency requirement into the statute.
11 Plaintiff's argument that Robert was not available because he was not mentally competent to consent
12 therefore fails.

13    Plaintiff also argues that her father was not available at the time of death because he was not
14 able to be reached by phone or mail. Although Defendants state that they possessed Robert's contact
15 information, it is undisputed that Dr. Mencher was unable to reach Robert to obtain his consent
16 before it was necessary to harvest and ship Bradley's organs. The statute does not define "available
17 at the time of death," and the Court is not aware of any relevant case law interpreting the phrase.
18 The dictionary definition of "available" is: "1a) capable of availing; having sufficient power or force to
19 achieve an end; . . . 3) such as may be availed of; capable of use for the accomplishment of a purpose;
20 . . . 4) that is accessible or may be obtained . . . ." WEBSTER'S THIRD NEW INTERNATIONAL
21 DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 150 (2002). Common sense dictates that in
22 this context, a person is not available at the time of death if the known method for contact did not
23 present a result in a reasonable period of time. Thus, Robert was not available at the time of death.
24 Plaintiff was next in the RCW 68.50.550(1) line of priority to make an anatomical gift, and therefore
25 has standing under Washington's UAGA.

26    Although Plaintiff has standing under Washington's UAGA, it is not clear that the statute
provides a cause of action to sue. The parties have not addressed this issue in their briefing. The

ORDER - 6

1  Court requests that the parties submit supplemental briefing on this issue. The supplemental briefing
2  shall not exceed five pages, and must be filed by February 28, 2007.

**3. Common law tortious interference with a corpse**

Plaintiff asserts a claim for common law tortious interference with a dead body.[2] Plaintiff asks this Court to create a new state cause of action based on the Restatement (Second) of Torts § 868. Section 868 provides that "one who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation" is subject to liability to a member of the family who is entitled to the disposition of the body.

Washington courts have not adopted the Restatement of Torts in its entirety. See Sikking v. National R.R. Passenger Corp., 52 Wn. App. 246, 249-50, 758 P.2d 1003 (1988) (declining to adopt Rest. 2d. Torts § 334). And no Washington court has expressly adopted Restatement (Second) of Torts § 868. The Washington legislature has already passed legislation in this area of law. See RCW 68.50 et seq. The Court declines to adopt Section 868 to create a new cause of action, and therefore dismisses Plaintiff's claim for common law tortious interference.

Plaintiff's briefing on summary judgment suggests that she is bringing a second, separate common law claim for tortious interference with a dead body based on two old Washington Supreme Court cases. See Wright v. Beardsley, 46 Wash. 16, 89 P. 172 (1907); Gadbury v. Bleitz, 133 Wash. 134, 233 P. 299 (1925). To the extent that Plaintiff is attempting to state a separate claim under these cases, she has not amended her complaint to do so. Plaintiff cannot amend her complaint in the context of opposing summary judgment. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000) (under Fed. R. Civ. P. 16, plaintiffs "must show good cause for not having amended their complaints before the time specified in the scheduling order expired"). Plaintiff has not requested to amend and has not suggested any good cause for doing so.

For these reasons, the Court dismisses Plaintiff's common law tortious interference with a dead body claim.

---

[2] Plaintiff's amended complaint only contains one claim for tortious interference with a dead body. That section refers only to Restatement (Second) of Torts § 868 in terms of legal support for the claim.

ORDER - 7

**4. Invasion of Privacy**

Plaintiff argues that Defendants breached their duty to refrain from interfering with any rights of privacy associated with the Bradley's body by moving and shipping Bradley's brain and other tissue to SMRI without any consent. Although not part of her amended complaint, Plaintiff's response to the motion for summary judgment also asserts that Bradley's autopsy and medical records were improperly sent to SMRI without consent.

The Washington Supreme Court has recognized the tort of invasion of privacy and adopted the Restatement (Second) of Torts § 652D (1977). Reid v. Pierce County, 136 Wn.2d 195, 205-06, 961 P.2d 333 (1998). That section of the Restatement provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

Restatement (Second) of Torts § 652D.

Plaintiff does not have a viable privacy claim because Defendants' actions of harvesting and shipping Bradley's brain and other tissues to SMRI do not constitute giving "publicity." Under Section 652D, "'[p]ublicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." § 652D cmt. a. "[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Id. Defendants' actions of harvesting and shipping Bradley's brain and tissue to SMRI, a non-profit organization supporting and conducting medical research, are not sufficient "publicity" to state a cause of action. See Berger v. Sonneland, 101 Wn. App 141, 155-56, 1 P.3d 1187 (2000) (rev'd on other grounds 144 Wn.2d 91, 26 P.3d 257 (2001) (concluding that a disclosure by one doctor to another doctor was private in nature); see also Mayer v. Huesner, 126 Wn. App. 114, 122, 107 P.3d 152 (2005) (concluding that an employer's communication to doctor was internal and private and did not fit within the invasion of privacy framework). KCMEO sent Bradley's brain and other tissue to a single organization, not to the public at large. Even if the Court

ORDER - 8

considered Plaintiff's new allegation regarding transmittal of the autopsy and medical records, Defendants further assert they kept all confidential information private and did not disclose any information about Bradley to the public. Plaintiff has not contradicted this assertion. Because the conduct alleged does not fit within the invasion of privacy framework, the Court dismisses Plaintiff's claim for invasion of privacy.

**5. Civil Conspiracy**

Plaintiff alleges that the Defendants conspired to unlawfully harvest Bradley's organs and tissues. To establish a civil conspiracy, Plaintiff must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy. All Star Gas, Inc. v. Bechard, 100 Wn. App. 732, 740, 998 P.2d 367 (2000). Plaintiff argues that Defendants made a lawful agreement to accomplish a lawful purpose by unlawful means.

Plaintiff does not allege sufficient facts to demonstrate that Defendants entered into an agreement to harvest and donate organs without consent. Plaintiff offers in support only the fact that KCMEO harvested and sent parts of Bradley to SMRI without consent, and that SMRI accepted the body parts of Bradley even though no consent was obtained. There is no evidence that SMRI knew of any lack of consent when they accepted the body tissues. Rather, Plaintiff's assertions of a conspiracy to obtain donations without consent are belied by the facts in the record. The letter of agreement between The Stanley Foundation and The King County Medical Examiner Division states that the KCMEO pathologist would

> [c]ontact the appropriate family members of the potential brain donor to request and obtain permission to remove and utilize the candidate's brain for research purposes. It is mutually agreed that no brain tissue shall be collected for the Stanley Foundation without prior written permission of the donor's legal next-of-kin.

(Dkt. No. 43, Ex. A, at 2). Furthermore, an email from SMRI to King County shows that SMRI only became aware of Bradley's missing consent form on October 27, 2004. (Johnston Decl., Ex. H). If SMRI had intended to enter into an agreement with KCMEO to accept body tissues without consent,

ORDER - 9

it is unlikely they would need to track consent forms or investigate missing consent forms. Plaintiff has not raised a triable issue of fact in this regard.

## Conclusion

The Court DENIES IN PART and GRANTS IN PART the Defendants' Motion for Summary Judgment. The Court DISMISSES Plaintiff's claims for common law tortious interference with a dead body, invasion of privacy, and civil conspiracy. But the Court DENIES Defendants' motion to strike and motion to dismiss Plaintiff's UAGA claim.

The Court requests the parties submit supplemental briefing on whether or not there is a cause of action under Washington's UAGA. The supplemental briefing shall not exceed five pages, and must be filed by February 28, 2007.

The clerk of the Court is directed to distribute this order to all counsel of record.

Dated this 23rd day of February, 2007.

/s Marsha J. Pechman_____
Marsha J. Pechman
United States District Judge
ORDER - 10